**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| G & G CLOSED CIRCUIT EVENTS, LLC,<br>　　Plaintiff,<br>　　　　　　v.<br>C&J SPORTS BAR 2, LLC *doing business as* ATL SPORTS BAR 2 and FRANKIE LAMONT TURNER, SR.,<br>　　Defendants. | Civil Action No.<br>1:24-cv-02789-SDG |

**OPINION AND ORDER**

Before the Court is Plaintiff G&G Closed Circuit Events, LLC's application for default judgment against Defendants C&J Sports Bar 2, LLC, *doing business as* ATL Sports Bar 2, and Frankie Lamont Turner, Sr. [ECF 8]. For the following reasons, the application for default judgment is **GRANTED**.

**I.　Background**

G&G filed this action to recover for violation of its rights as the exclusive commercial domestic distributor of the *Errol Spence Jr. v. Terence Crawford – Championship Fight Program* (the Program), which took place on July 29, 2023.[1] G&G sublicensed its rights to various businesses, including hotels, casinos, and bars, but Defendants were not among those that contracted with G&G or paid the necessary fee to display the Program in a commercial establishment.[2] The Program

---

[1]　ECF 1, ¶ 8.

[2]　*Id.* ¶¶ 9–10.

was shown at Defendant C&J Sports Bar 2, LLC (doing business as ATL Sports Bar) despite this lack of a license.[3] Defendant Frankie Lamont Turner, Sr. was the controlling manager or owner of ATL Sports Bar and is alleged to have had the right and ability to control the broadcast of the Program.[4] G&G further alleges that Defendants' unauthorized broadcast was willful and undertaken for commercial advantage and private financial gain.[5] G&G contends Defendants' conduct violated the Communications Act of 1934, 47 U.S.C. § 605, *et seq.*, and the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, *et seq.* As a result of these alleged violations, G&G seeks statutory damages, enhanced damages, reasonable attorneys' fees, and costs—a total of $114,372.94.[6]

Turner was personally served with process,[7] and service on ATL Sports Bar was effected by delivery of the summons and complaint to an authorized agent (*i.e.*, Turner).[8] Since neither Defendant responded to the Complaint, G&G sought and received a clerk's entry of default.[9] G&G now moves for default judgment.[10]

---

[3]   *Id.* ¶¶ 11–12.

[4]   *Id.* ¶ 14.

[5]   *Id.* ¶ 15.

[6]   *See generally* ECF 1; ECF 8, ¶ 5.

[7]   ECF 6.

[8]   ECF 5.

[9]   ECF 7; Aug. 2, 2024 D.E.

[10]  ECF 8.

## II.     Applicable Legal Standard

A plaintiff seeking default must first obtain a clerk's entry of default by providing evidence "by affidavit or otherwise" that the opposing party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). A default under Rule 55(a) constitutes an admission of all well-pleaded factual allegations in the complaint. *Beringer v. Hearshe, Kemp, LLC*, 2011 WL 3444347, at *2 (N.D. Ga. Aug. 8, 2011) (citing *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005)). The plaintiff must then move the Court for a default judgment.  Fed. R. Civ. P. 55(b); *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1360 n.1 (N.D. Ga. 2011) ("First the clerk must enter a party's default . . . the party must then apply to the court for a default judgment.").

Entry of a default by the clerk does not, however, automatically warrant a default judgment: A defaulting defendant does not admit facts that are not well-pleaded or conclusions of law. *Frazier*, 767 F. Supp. 2d at 1362; *see also United States v. Khan*, 164 F. App'x 855, 858 (11th Cir. 2006) ("[A] default judgment may not stand on a complaint that fails to state a claim."). Nor does a defaulting defendant admit allegations about damages. *Frazier*, 767 F. Supp. 2d at 1365. If the plaintiff is seeking an uncertain or speculative damages amount, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).

**III. Discussion**

Defendants here were properly served and have failed to respond to the Complaint or otherwise defend against this action. The well-pleaded allegations in the Complaint are therefore deemed admitted.

### A. G&G Is Entitled to Judgment in Its Favor on Liability.

G&G asserts claims under the Communications Act (§ 605) and the Cable & Television Consumer Protection and Competition Act (§ 553). Under either statute, G&G must show that Defendants "(1) intercepted or received the Program, (2) did not pay for the right to receive or to exhibit the Program, and (3) displayed the Program to patrons of its commercial establishment." *Joe Hand Promotions, Inc. v. Roussell*, 2019 WL 5273962, at *2 (N.D. Ga. Jan. 30, 2019); *see also J & J Sports Prods., Inc. v. Khin*, 2016 WL 9046677, at *3 (N.D. Ga. Mar. 31, 2016); *J & J Sports Prods., Inc. v. Just Fam, LLC*, 2010 WL 2640078, at *2 (N.D. Ga. June 28, 2010).[11]

---

[11] The Court notes there is a circuit split concerning whether §§ 553 and 605 cover both satellite transmissions and cable programming transmitted over a cable network. *See Joe Hand Promotions, Inc. v. Jones*, 2019 WL 5280971, at *2 (N.D. Ga. Apr. 18, 2019) (following reasoning from Third and Seventh Circuit and holding "§ 605's plain language prohibits commercial establishments from intercepting and broadcasting satellite programming, while § 553 addresses interceptions that occur through a cable network"). The Eleventh Circuit has yet to address this issue. *Id.* The Complaint does not specify whether Defendants broadcast the Program via satellite, cable, or internet. However, the difference is immaterial to the Court's ruling here.

G&G's allegations are well-pleaded and state plausible claims under the common elements of both §§ 553 & 605. Specifically, G&G alleged that it had exclusive nationwide television distribution rights to the Program.[12] Defendants broadcast the Program at ATL Sports Bar without paying for the rights to do so.[13] These allegations are deemed admitted by virtue of Defendants' default. Further, in support of its motion for default judgment, G&G provided evidence that Defendants broadcast the Program to ATL Sports Bar's patrons.[14] G&G is thus entitled to judgment by default as to liability on both its counts.

### B. G&G Is Entitled to Damages.

Although G&G is entitled to default judgment as to liability, its damages allegations are not admitted by Defendants' default. Rather, the appropriate damages must be determined by the Court. *Frazier*, 767 F. Supp. 2d at 1365 (citing *Virgin Records Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 n.5 (S.D. Ala. 2007)). There is no *per se* requirement that the Court hold an evidentiary hearing. *Id.*; *see also Gibson v. Kirkwood Bar & Grill, LLC*, 2014 WL 632357, at *1 (N.D. Ga. Feb. 18, 2014) (citing *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011)) ("[A]n evidentiary hearing for a determination of damages is

---

[12] ECF 1, ¶ 8.
[13] *Id.* ¶¶ 11–14.
[14] ECF 8-4.

not *always* required; rather, it is a decision that is left to the discretion of the Court."). The Court may award damages without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Organizacion Miss Am. Latina, Inc. v. Urquidi*, 712 F. App'x 945, 948 (11th Cir. 2017).

Sections 553 and 605 authorize the Court to award actual or statutory damages, enhanced damages (if the violation was willful), reasonable attorneys' fees, and costs. As another judge of this Court has explained:

> Under § 605, a court may award statutory damages between $1,000 and $10,000 for each violation, and if a violation is committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, a court may award up to an additional $100,000. Under § 553, a court may grant statutory damages between $250 and $10,000 per violation, and up to $50,000 may be awarded if the court finds that the act was violated willfully and for purposes of commercial advantage or private financial gain. In addition to damages, both § 605 and § 553 provide that a court shall award the plaintiff full costs of bringing an action, including reasonable attorneys' fees.

*J & J Sports Prods., Inc. v. Allen*, 2011 WL 941502, at *3 (N.D. Ga. Mar. 14, 2011) (internal quotation marks omitted) (citations omitted).

### 1.   Statutory Damages

G&G seeks the maximum statutory damages under §§ 553 or 605—$10,000.[15] The Court is given "wide latitude . . . in awarding statutory damages."

---

15   ECF 8-1, at 5–10; ECF 8-2, ¶ 6.

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990). And since the Court's award falls within the permissible range authorized under each statute, the distinction between the two statutes is immaterial here.

In the Eleventh Circuit, district courts differ in their approaches to awarding statutory damages:

> Some courts will award damages as a flat sum, while other courts award the plaintiff the license fee the defendant, based on its maximum capacity, would have paid if it had legally purchased the event for exhibition. Still other courts will, when the exact number of patrons is known . . . base the award on the number of patrons in the establishment who viewed the unauthorized showing multiplied by a number set by the court.

*J & J Sports Prods., Inc. v. Space Millennium 2013 LLC*, 2015 WL 13357907, at *3 (N.D. Ga. Sept. 17, 2015) (cleaned up).

Although statutory damages are appropriate when it is difficult to calculate a plaintiff's actual damages, *Cable/Home Commc'n*, 902 F.2d at 850, G&G has provided no legal or factual basis to support an award of the *maximum* amount. The investigator who visited ATL Sports Bar estimated the bar's maximum capacity as 100.[16] He saw the Program displayed to a maximum of 25 patrons on up to seven screens.[17] The bar did not require patrons to pay a cover charge to

---

[16] ECF 8-4, at 1.

[17] *Id.*

watch the program.[18] There is no evidence that Defendants were repeat offenders, that they marketed their broadcast of the Program, or that they charged anything other than the normal rates for food and drink during the broadcast.

The most reasonable estimate of G&G's actual damages, then, is the amount it would have received had Defendants properly sublicensed the Program—$1,800.[19] The Court therefore finds this amount is the appropriate statutory damages award. Although G&G asserts that the Court should consider deterrence in awarding statutory damages,[20] this factor is more appropriately assessed in connection with enhanced damages.

### 2. Enhanced Statutory Damages

G&G also seeks the maximum for enhanced statutory damages.[21] "Under both statutes, the district court is given discretion to award enhanced damages where there is a finding of willful conduct done for purposes of 'commercial advantage or private financial gain.'" *Khin*, 2016 WL 9046677, at *5 (quoting 47 U.S.C. §§ 553, 605). Here, Defendants' violations were willful. G&G's president attested that its programming is encrypted and requires authorization

---

[18] ECF 8-4, at 1.

[19] ECF 8-3, at 23.

[20] ECF 8-1, at 8–9.

[21] The maximum enhanced damages available under § 605 is $100,000, 47 U.S.C. § 605(e)(3)(C)(ii), while the maximum under § 553 is $50,000, *id.* § 553(c)(3)(B).

of a commercial activation to broadcast. Thus, Defendants could not have broadcast the Program unknowingly or without knowledge that they were doing so improperly.[22] Instead of contracting with G&G, Defendants illegally intercepted the Program.[23] Having defaulted, Defendants have also admitted G&G's allegations that they took deliberate, unauthorized acts to broadcast the Program and did so for commercial advantage and private financial gain.[24]

To determine if such willful conduct justifies enhanced damages, courts consider several factors "[1] repeated violations over an extended period of time; [2] substantial unlawful monetary gains; [3] advertising of the broadcast; [4] charging of a cover charge or premiums for food and drinks; or [5] plaintiff's significant actual damages." *Just Fam*, 2010 WL 2640078, at *3. None of these aggravating factors is present. But courts have also held that willfulness is established "by the fact that an event is broadcast without authorization." *Space Millennium 2013*, 2015 WL 13357907, at *3; *Joe Hand Promotions, Inc. v. Blanchard*, 2010 WL 1838067, at *4 (S.D. Ga. May 3, 2010). And, as G&G points out, there is a strong need to deter the illicit conduct in which Defendants engaged.

---

[22] ECF 8-3, ¶¶ 9–13.

[23] *Id.* ¶¶ 7–8.

[24] ECF 1, ¶ 15.

District courts in the Eleventh Circuit routinely calculate enhancement awards by trebling the statutory damage amount. *See, e.g.*, *Jones*, 2019 WL 5280971, at *3; *Khin*, 2016 WL 9046677, at *5; *J & J Sports Prods., Inc. v. Herbelaine, Inc.*, 2016 WL 9045967, at *5 (N.D. Ga. Feb. 8, 2016); *Blanchard*, 2010 WL 1838067, at *4; *Just Fam*, 2010 WL 2640078, at *3. "The formula of three times the statutory award is common . . . where the establishment is a first-offender, did not charge for entry, did not charge a premium on drinks or food during the broadcast, and did not advertise the broadcast." *Blanchard*, 2010 WL 1838067, at *4. This rationale applies here. The Court accordingly applies a three-times multiplier of the statutory damage award for a total enhanced damages award of $5,400.

### 3.   Attorneys' Fees and Costs

G&G is also entitled to its reasonable attorneys' fees and costs. 47 U.S.C. § 553(c)(2)(C), § 605(e)(3)(B)(iii). It submitted evidence of the work performed by its counsel and requests $4,372.94 in fees and costs.[25] Based on counsel's declaration and the supporting evidence, the requested amount is reasonable. As such, G&G is entitled to $4,372.94 in fees and costs.

## IV.   CONCLUSION

G&G's motion for default judgment [ECF 8] is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of G&G in the amount of $11,572.94—

---

[25]   ECF 8-5.

$1,800 in statutory damages, $5,400 in enhanced damages, and $4,372.94 in attorneys' fees. Defendants are jointly and severally liable for these damages. The Clerk is **DIRECTED** to mail a copy of this Order to each Defendant at the address listed in the summons. The Clerk is further **DIRECTED** to close the case.

**SO ORDERED** this 3rd day of January, 2025.

Steven D. Grimberg
United States District Judge